# FIRST NATIONAL BANK OF ST. JOHNSBURY *v.* TOWN OF CONCORD.

*Constitutionality of Town Aid to Railroads.    Legislative Control of Town Action.    Defences to Suit upon Town Bonds by Bona-Fide Purchaser for Value.*

The Legislature passed an act authorizing certain towns to aid in the construction of certain railroads by subscribing for, or purchasing the stock or bonds of, such roads, or by guaranteeing payment of the interest thereon, and to make and issue their own negotiable bonds for that purpose, but providing that "the assent in writing thereto of a majority of those paying taxes, both in number and amount of grand list then in force," signed and acknowledged before some person authorized to take the acknowledgment of deeds, by each person so assenting, should first be obtained on an instrument of assent naming three resident citizens and tax-payers to be commissioners to make said subscription, and that said commissioners should also first append to such instrument their certificate, signed and sworn to, stating that such instrument had been duly signed and acknowledged by such majority, and cause such instrument and certificate to be lodged and recorded in the town clerk's office, and a copy thereof, certified by the town clerk, to be lodged and recorded in the county clerk's office.  The act also provided that the commissioners, before entering upon their duties, should be sworn to the faithful performance thereof, and a certificate thereof be made upon such instrument and recorded therewith.  In an action on coupons taken from bonds issued by one of those towns in ostensible conformity to that act, the defendant objected that the act was "unconstitutional in the mode prescribed for binding the town," in that the town was to be bound otherwise than by vote in a meeting duly warned ; that guardians, executors, &c., as such, women, and corporations, were to sign the instrument of assent ; that the

33

commissioners were named in the instrument of assent, and not left to be afterwards chosen ; that they, prior to the determination of the question of their own election, were to decide whether the requisite majority had signed ; that their authority depended upon their own count; and that they were to decide privately and without hearing. *Held*, that as the purpose for which the bonds were authorized to be issued was public, and the exercise of the power of taxation for their payment therefore warranted; as the town was but a municipal subdivision of the state, having no inherent rights not reserved to it by the Constitution; and as the only absolute right so reserved was that of selecting a member of the House of Representatives— the Legislature had the right, not only to authorize the giving of such aid, but also to prescribe the mode by which it should be given ; and that the act was therefore not unconstitutional in the particulars urged.

The act authorized aid to "The Montpelier & St. Johnsbury and The Essex County Railroad." The bonds from which the coupons in question were taken were issued in aid of the latter road alone. Defendant urged that under the act the defendant could give aid, if at all, only to *both* of the roads therein named. *Held*, that as those companies were separate and distinct and had no common stock or bonds; as they had both been incorporated when the act was passed; and as some of the towns empowered were on the line of one road and some on that of the other—the act authorized the towns named to aid *either* or both of said roads.

It appeared that the Montpelier & St. Johnsbury Railroad Company abandoned the building of a part of the line of road included in its charter, having built only that part lying between St. Johnsbury and West Danville, but it did not appear but that the bonds from which the coupons in question were taken had been already issued. The Essex County Railroad Company was authorized to build a road from the Connecticut river to St. Johnsbury, one of the termini of the former road. *Held*, that as none of that enterprise to which aid was subscribed had been abandoned, and as there was no condition in the subscription that the Montpelier & St. Johnsbury Railroad should be built, the subscription was not avoided by such abandonment.

The act, after providing that before the subscription should be made, the assent of certain persons should be procured in a prescribed manner, and the instrument of assent, with the commissioners' sworn certificate of the procurement of the assent of the required majority thereto attached, should be recorded, and after prescribing the manner in which the commissioners should determine whether the majority had been obtained, and the manner in which the bonds should be drawn and issued, provided further, that "such instrument and certificate, so executed and recorded, shall be conclusive evidence of the facts therein stated." *Held*, that as the recorded certificate of the commissioners was conclusive as to all matters *in pais* committed to them, it concluded all question as to the assenting of the required majority, as between the town and a *bona-fide* holder of bonds for value.

The act provided that the instrument of assent should "set forth, in substance, the contract, subscription, or purchase to be made" by the town, and that the bonds might be issued "at a rate of interest not exceeding seven per cent." The instrument of assent stated that the bonds to be issued were "to bear interest at a rate not exceeding seven per cent." It was objected that as the instrument of assent did not specify the rate of interest the bonds should bear, it did not comply with that provision of the act requiring the instrument to set forth the subscription in substance. *Held*, that as the defendant by proceeding under the act had impliedly authorized the selectmen and treasurer to fix the rate of interest within the limit prescribed, or, at least, as those officers *had* fixed the rate, executed the bonds and put them on the market, it could not, as against a *bona-fide* holder of the bonds for value raise that objection, nor object that no vote was taken fixing the rate.

First Nat. Bank of St. Johnsbury *v.* Town of Concord.

Defendant objected also that the bonds were prematurely issued. But it was *held* that the selectmen and treasurer, upon whom the duty of issuing them was cast, had of necessity to judge when they were required to perform that duty ; and that defendant, having known that the bonds were being issued but taken no steps to prevent it, could not urge that objection against a *bona-fide* holder of the bonds for value.

The instrument of assent was circulated for signatures in seven parts. The certificate of the commissioners certified that " said instruments of assent were *as* signed by a majority," &c. *Held,* that the insertion of the word *as* before the word *signed,* although inartificial, affected neither the meaning of the certificate· nor the construction to be put upon it.

Each one of the several parts of the instrument of assent so circulated was, except as to signatures and acknowledgments, uniform with all the others. When signed all the parts were bound together, but one only was recorded—all of the signatures, &c., appearing upon the record to have been appended to one instrument. *Held,* that the record as made was in substantial compliance with the act.

The act provided that the bonds should " be signed by the selectmen and countersigned by the treasurer." The coupons in question were signed by the treasurer alone, and some of the bonds from which they were taken, by two only of the three selectmen. *Held,* that as the duty of signing the bonds was imposed on the selectmen in their official capacity, and as under s. 92, c. 15, Gen. Sts., the act of a major part of the selectmen would be as valid as the act of the whole board, the bonds were duly executed ; and that as the coupons only re-expressed the liability for interest, the payment of which was provided for by the bonds, and as the act was silent as to the execution of the coupons, the coupons were also duly executed—the signature of any town officer, or any execution that would identify them as part of the bonds from which they were taken, being sufficient.

Question was made as to whether the instrument of assent, certificate, &c., were in fact recorded before subscription was made. *Held,* that a *bona-fide* holder of bonds for value need make no inquiry as to that beyond the record itself—the record being conclusive as between him and the town.

ASSUMPSIT on thirteen coupons for interest for six months from September 1, 1875, on thirteen five-hundred-dollar bonds issued by the defendant town in aid of the Essex County Railroad.

The bonds in question were issued under an act of the Legislature entitled, " An Act to enable the towns therein named to aid in the construction of the Montpelier and St. Johnsbury and the Essex County Railroads," approved March 28, 1867, which, so far as material, was as follows :

SEC. 1. ˙ The towns * * * of Concord * * * are hereby authorized and empowered, in the manner hereafter specified, to aid in the construction of the Montpelier and St. Johnsbury and the Essex County Railroads, either by subscribing for, or purchasing the stock or bonds of such roads, or by guaranteeing the payment of interest on such stock or bonds.

Sec. 2. Such subscription, purchase or contract, may be made by any of said towns, when the assent in writing thereto of a majority of those paying taxes, both in number and amount of grand list then in force in such town, shall first be obtained by an instrument of assent, signed and acknowledged before any person authorized to take the acknowledgment of deeds in the county in which such town is situated, by each person so assenting ; and each assent shall be dated, and shall specify the amount of the grand list of the person assenting. Said instrument of assent shall set forth in substance the contract, subscription or purchase, to be made by such town, and the conditions on which the same is to be made ; provided, the assent of no tax-payers shall be binding or of force, or be counted in ascertaining the majority aforesaid, unless such majority shall have been obtained within six months from the date of the first certificate of assent.

Sec. 3. Every such instrument of assent shall name three persons, who shall be resident citizens and tax-payers of the town wherein such assent shall take effect, who shall be commissioners to make and execute in the name and on behalf of such town, the contract, subscription or purchase therein mentioned. And when said commissioners shall have made and executed said subscription, purchase, or contract, in pursuance of the terms of such assent and the provisions of this act, the same shall be binding upon such town.

Sec. 4. Any of said towns is hereby authorized and empowered to make and issue negotiable bonds or notes, at a rate of interest not exceeding seven per cent. per annum, specified in semi-annual coupons thereto attached, for the purpose of carrying out the contract, purchase or subscription made by the commissioners of such town as before provided in this act. Said bonds or notes shall be signed by the selectmen, and countersigned by the treasurer of the town issuing the same, and shall be dated and numbered ; and a record of said bonds or notes shall be made and kept in the town clerk's office of such town. And the treasurer of such town is hereby authorized, and it is made his duty, to issue said bonds or notes, or pay over the avails thereof, to the parties entitled thereto by the terms of such contract, purchase or subscription.

Sec. 5. In determining the majority provided for in section two of this act, reference shall be had to the grand list of such town in force at the time the first certificate of assent is made. And where the estate of any person deceased, or under guardianship, or any estate in the hands of trustees, shall be included in said list, the executor, administrator, guardian, or trustee, representing such estate, is hereby authorized to give the assent hereinbefore provided, in behalf of such estate. In case the property of any corporation is embraced in such list, the majority of the directors of such corporation may give such assent. * * * In determining the majority provided for in section two of this act, tax-

payers, non-resident in such town, and the grand list against such non-resident tax-payer, shall be excluded.

SEC. 6. Whenever any instrument of assent herein provided for shall have been signed and acknowledged by the majority, in the manner hereinbefore required, the commissioners named in such instrument shall append thereto a certificate, by them subscribed and sworn to, stating that such assent has been signed and acknowledged by such majority as is required by this act, and shall cause such instrument of assent and such certificate to be filed and recorded in the town clerk's office of such town, and shall also cause a copy of such instrument and certificate, certified by the town clerk of such town, to be lodged and recorded in the county clerk's office in the county in which such town is situated ; and until said records are made, such commissioners shall not proceed to make any contract, subscription or purchase on behalf of said town. Before entering upon their duties, said commissioners shall be sworn to a faithful performance of their duties, and a certificate of such oath shall be made upon such instrument of assent, and recorded therewith. Such instruments and certificates, so executed and recorded, shall be conclusive evidence of the facts therein stated, and a certified copy thereof from either of the offices where the same are recorded, shall be admissible as evidence.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The case was referred, and the referee reported in substance as follows :

The plaintiff offered in evidence a certified copy of the records of the defendant, showing the issue, at various times between May 13, 1871, and March 13, 1876, of a large number of defendant's bonds, including the bonds in question in this suit, and it was received subject to objection. The plaintiff also offered the thirteen coupons sued upon, to the introduction of which the defendant objected, for that they were not properly signed and executed, nor legally issued, and for that the bonds to which they were attached when they were issued were not produced in connection therewith, but they were received subject to objection. The plaintiff also offered in evidence a certified copy of the record of an instrument of assent, with a certificate of commissioners thereto appended ; also a copy of the same papers certified by the clerk of the County Court, together with said clerk's certificate that they were duly recorded in his office on September 2, 1867, all of which were received subject to objection. The defendant claimed that the plaintiff could not recover under the act under which the bonds in question were issued, because that act only authorized the towns therein named to bond themselves

in aid of both railroads therein named; but the referee ruled otherwise, subject to the opinion of the court thereon. The defendant also claimed that if it were held that the act authorized the defendant to subscribe for stock in one of the roads alone, it must be on the ground that to aid one of the roads would be to aid the enterprise contemplated by the act, which was to build connecting roads from Montpelier to the Connecticut river, and that if that connection was abandoned, the defendant's subscription became void ; and alleged that that part of the Montpelier and St. Johnsbury Railroad extending from West Danville to Montpelier had never been built, and that the building thereof had been abandoned. The defendant offered in evidence upon this point records of votes of aid for the Montpelier & St. Johnsbury Railroad in the towns of Montpelier, Plainfield and Marshfield, the act of incorporation and records of meetings of the Montpelier & St. Johnsbury Railroad Company, the records of the Essex County Railroad Company, a contract dated July 16, 1869, between said railroad companies and the Lamoille County Railroad Company for their consolidation, a mortgage of May 1, 1871, of the whole line of railroads to secure the sum of $2,300,000, and a mortgage of January 1, 1875, to secure the sum of $9,500,000 ; and offered as witnesses James C. Houghton, treasurer of Montpelier, P. P. Pitkin, one of the directors of the Montpelier & St. Johnsbury Railroad, and others. The plaintiff claimed that the purposes of the Essex County Railroad under its charter, were substantially carried out by the connection of that railroad with the Lamoille County and the Central Vermont Railroads ; that the evidence offered upon that point was immaterial and improper ; and that the question of the building of that part of the Montpelier & St. Johnsbury Railroad between West Danville and Montpelier was immaterial. But the evidence was received subject to objection ; and I find therefrom, subject to the opinion of the court on all legal questions arising thereon, that the Montpelier & St. Johnsbury Railroad Company built its road from St. Johnsbury to West Danville, and no further, and on or about July 1, 1869, abandoned the further building of its road towards Montpelier, and consolidated with the Essex County and the Lamoille County Railroads, forming what is known as the Vermont division of the Portland & Ogdensburg Railroad, said consolidation being, not a consolidation of the several companies, as each company retained its organization, but a contract between them to build and operate their respective roads under a joint management. The defendant claimed that the instrument of assent was not signed and acknowledged by the requisite majority of tax-

payers, that the signatures thereto were not properly dated, that some of them had no grand list appended, and that said instrument was therefore insufficient; and offered in evidence its grand list for the year 1867, and the original instrument of assent, together with parol evidence as to who were resident in defendant town, and as to the manner in which said instrument was signed. The plaintiff claimed that the certificate of the commissioners was conclusive, and that the evidence was inadmissible; but it was admitted subject to objection. I find that the defendant's grand list for that year contained the lists of four hundred and fifty-two tax-paying individuals and firms, but that as some names were doubly represented by way of partnerships, the list in fact contained the names of only four hundred and forty-seven different individuals; that of said lists twenty-one were lists of non-residents, who, counting members of firms, were twenty-five in number; and that said grand list amounted to $4,731.04, of which $256.30 was derived from the lists of said non-resident tax-payers. There were two hundred and thirty-six persons and firms having a list, that signed the instrument of assent, and their aggregate list was $2,557.49. The signatures of nine of that number, representing an aggregate list of $90.48, were without date, and without dots to indicate date; and there were twenty-three other of those persons, with an aggregate list of $252.09, who never acknowledged their assent. If the court should be of opinion that as matter of law the nine signatures without date, and the twenty-three signatures of those who never acknowledged their assent, should be excluded in computing the majority required by said act, then I find that said instrument was not signed by a majority of the resident tax-payers, either in number or amount of list. The defendant claimed that the record of the instrument of assent made by the town clerk was not a true record, and offered the original instrument in proof thereof; to which the plaintiff objected; but it was admitted subject to objection; and I find that nine names that appeared on said instrument without any grand list, were omitted from the record, and that the dates wanting on said instrument were supplied on the record by dots and otherwise. I also find that said instrument was circulated for signatures in seven different parts, each part having a printed heading uniform with all the others, that after the signatures were obtained those parts were bound together, and that in recording, both the town and the county clerks copied only the first heading, omitting the others. The defendant claimed that no copy of said instrument certified by its town clerk was recorded in the county clerk's office, as required by the act, but that instead thereof the

record made was of a certified copy of the record in said town clerk's office ; and from the papers, which were introduced in evidence, I so find.   The defendant also claimed that the record in the county clerk's office was not in fact made on the day shown by the clerk's certificate—September 2, 1867,—nor until after the 12th of that month ; but I find that it was made about the time it purported to have been, and before September 12th. It appeared from evidence received subject to the plaintiff's ob-jection, that the persons who circulated the instrument of assent for signatures, to induce tax-payers to sign the same, represented that the railroad would be built to Montpelier, that the Central Vermont Railroad Company would lease it, and pay six per cent. on its cost, and that there were assurances that even better terms might be made ; but the extent to which those representations influenced signers did not distinctly appear.   It appeared that the bonds from which the coupons in question were taken were issued, one on June 19, four on October 23, 1871, two on September 29, 1874, and six on March 13, 1876 ; and that most of them were dated and ·carried interest previous to the time of their actual issue.   Two of said bonds were signed by all three of the select-men, but the remaining eleven were signed by only two, the other refusing to sign or issue them ; and all the coupons were signed by the treasurer alone.   During the time of the issue of said bonds there were three acting selectmen of defendant town.   It appeared from evidence received subject to objection, that by a contract between the railroad company and the defendant, the de-fendant's selectmen were not to pay any interest on its bonds until said railroad was opened for business to the Connecticut river, which occurred about December 1, 1875, but that said company was to pay the interest thereon up to that time.   It also appeared that the defendant's selectmen issued bonds of the defendant to said company from time to time, especially to enable said company to raise funds to pay the accrued interest on bonds already put upon the market, and that said company paid a portion of said interest, but how much and up to what time did not distinctly ap-pear.   Whenever bonds of the defendant were delivered to the treasurer of said company, he executed receipts therefor to de-fendant's treasurer to apply on the defendant's subscription ; and when said company paid coupons on said bonds, they were deliv-ered to the defendant's treasurer by the treasurer of said company. When the last bonds were delivered the defendant's selectmen were informed that they could have a certificate of stock, but none was tendered, or afterwards called for or received, although said company was ever after ready to give one.   At the annual

meetings of the stockholders in said company in 1871 and 1872, two of the defendant's selectmen were present and voted on the defendant's stock for directors in said company ; but there was no vote of defendant town directing them to do so, and said selectmen acted therein on their own view of their official duty. It was conceded, that question being raised, that the defendant never authorized nor ratified the issuing of said bonds by any vote in town meeting, but that on the contrary the town voted in town meeting not to pay said bonds, nor any interest thereon, and I find accordingly. The plaintiff claimed that no such vote was necessary, that the issuing of said bonds was a matter of public notoriety in defendant town, that no legal measures were taken by the defendant or by any of defendant's inhabitants to prevent their issue, and that the defendant so far acquiesced therein as to be estopped from setting up a defence to the bonds in the hands of an innocent holder ; and I find that the issuing of said bonds from time to time from June 19, 1871, to March 13, 1876, was a matter of public notoriety in defendant town, and generally known to the inhabitants thereof, that no legal measures were taken by the defendant or by any of its inhabitants to prevent the issuing of said bonds, and that the plaintiff is the innocent holder of said bonds for a valuable consideration. I find that the commissioners appointed to make subscription of stock for the defendant and the several officers of the defendant acted honestly and in good faith in said matter, so far as appeared, and no claim was made to the contrary. I also find that the Essex County Railroad Company is insolvent, and its stock worthless. The defendant, by consent of the trier, raised the question of jurisdiction, objecting that as the several bonds represented by the coupons in question were for more than $200, the action was not properly brought before a justice of the peace, but the referee overruled the objection subject to the opinion of the court. If upon the foregoing facts the court should be of opinion that the plaintiff is entitled to recover, I find due it on said coupons the sum of $195 with interest thereon from March 1, 1876, and costs ; otherwise, for the defendant to recover its costs.

The instrument of assent was as follows :

We the undersigned, inhabitants and tax-payers in the town of Concord, upon the grand list now in force, do hereby give our assent that said town of Concord may aid in the construction of the Essex County Railroad in the manner following :—The commissioners hereinafter named are to subscribe for two thousand shares of the stock of said railroad company, for and in the name of said town, to be paid for by notes

34

or bonds of said town, equal in amount to the par value of said shares of stock, said notes or bonds to be issued in sums of not less than fifty dollars nor more than one thousand dollars each, and to bear interest at a rate not exceeding seven per cent., specified in semi-annual coupons thereto attached, and to be payable after five years and within twenty years of their date, and to be issued under and according to an act of the Legislature, approved March 28, 1867. Said assent and subscription are made subject to the following fundamental condition :—If said road shall not be located and constructed through said town of Concord, along the Moose River Valley, and by Miles' Pond to Connecticut River, in Lunenburgh, then said assent and subscription shall be of no force or effect. And we do hereby name and constitute DAVID HIBBARD, HARVEY JUDEVINE, and JOSEPH E. WOODBURY, resident citizens and tax-payers of said town of Concord, to be commissioners to make and execute, in the name and on behalf of said town, the above-named contract and subscription, and to do all other things required of such commissioners by said act.

In testimony whereof we have each hereunto set our names, the date of signing, and the amount of our several grand lists.

The certificate of the commissioners appended to said instrument was as follows :

We the undersigned, the persons named as commissioners in the foregoing instruments of assent, being resident citizens and tax-payers in said Concord, having been duly sworn, do hereby certify that we have carefully examined the list of names annexed to said instruments, and compared the same with the grand list of the town of Concord, and that said instruments of assent are as signed by a majority of the persons resident in said town paying taxes, both in number and amount of grand list in said town in force at the time the said first certificate of assent was made; and we do therefore declare and certify that said instruments of assent have been duly signed and acknowledged by such majority as is required by the act of the Legislature of the State of Vermont, approved on the 28th day of March, A. D. 1867, to authorize a subscription by said commissioners in behalf of said town, as provided in such instruments of assent. Given under our hands at Concord, this 26th day of August, A. D. 1867.

DAVID HIBBARD,
HARVEY JUDEVINE, } *Commissioners.*
JOSEPH E. WOODBURY, )

At the June Term, 1877, Caledonia County, the court, Ross, J., presiding, by consent of parties, rendered judgment, *pro forma*, on the report for the defendant to recover its costs ; to which the plaintiff excepted.

*L. P. Poland*, for the plaintiff.

It is perfectly established that the building of a railroad is such a *public use or purpose*, that money for that purpose may be raised by taxation. *Aldis* v. *Lamoille Valley R. R. Co.*, decided at the General Term, 1871, and see cases *passim*. And it may be done by the direct, imperative exercise of legislative power over the people of the state, town, or county, or the Legislature may authorize the officers of a county, city or town to aid such public works by subscribing for stock, and executing bonds or other obligations of the municipality in payment for it, without any vote or assent of the people interested. The obligatory force of such subscriptions has been uniformly sustained by the Supreme Court of the United States. I cite only the following recent cases: *County of Callaway* v. *Foster*, and *County of Scotland* v. *Thomas*, United States Supreme Court, October Term, 1876; *Thompson* v. *Lee Co.* 3 Wall. 327.

The Legislature may impose such conditions as it sees fit upon the exercise of that power by such officers, and the conditions must be complied with before the power can be exercised. The assent of the inhabitants or tax-payers of the town was not necessary to the valid exercise of that power; but as the Legislature made that a condition, it must be complied with. But if it were necessary to obtain such assent the mode of obtaining it is wholly in the discretion of the Legislature. Towns, under our Constitution, are the mere creatures of the Legislature. The duties and obligations cast upon them in behalf of schools, &c., are wholly by force of laws passed by the Legislature. Who shall be voters in town meetings, is a matter wholly within legislative control, and the provisions of the Constitution as to who shall be " freemen," or electors, has nothing to do with it. It is perfectly within the power of the Legislature, under our Constitution, to make women voters in town meetings.

The idea that there is a lurking antecedent sovereignty in towns, above and higher than the Constitution, or that the state was formed by a confederacy of towns, each retaining its original sovereignty, except so far as it had surrendered it to the state, is quite new. But if the idea be sound, it seems odd to apply it to

a town created by the Legislature itself, long since the Constitution was formed. The mode of obtaining the assent of the taxpayers of the town, was valid and constitutional. *Gould* v. *Sterling*, and *Starin* v. *Genoa*, 23 N. Y. 439; *Venice* v. *Murdock*, 2 Otto, 494; *Bissell* v. *Jeffersonville*, 24 How. 287; *Aldis* v. *Lamoille Valley Railroad Co.*, *supra*; *Goodall* v. *Town of St. Johnsbury*, decided by PECK, Chancellor, in 1868.

The commissioners, having duly certified that the instrument of assent was duly signed and acknowledged by the requisite majority, and there being no evidence offered, but that they acted honestly and in good faith, their certificate is conclusive, and all evidence to contradict it is inadmissible. *Aldis* v. *Lamoille Valley Railroad Co. supra; Venice* v. *Murdock, supra.* The Supreme Court of the United States has uniformly held that where officers of towns and counties have been authorized to make subscriptions to railroads, and issue bonds to the railroad in payment, upon a vote of the people of the town or county authorizing it, where no express provision was made as to who should decide whether the election had been properly held, or what should be the evidence of it, it must be implied that the officers authorized to issue the bonds were clothed with authority to determine whether such precedent conditions have been complied with, and that their decision was conclusive in favor of a *bona-fide* holder. In *Knox Co.* v. *Aspinwall*, 21 How. 539, and in a great number of cases following it, it has been held that the mere issue of the bonds by such officers was conclusive. But where such officers, in the bonds issued by them, recited that such precedent conditions had been complied with, a very large majority, if not all, the judges of that court, have held such recital to be conclusive. Under such a statute as ours, how can it be doubted that it is conclusive, unless impeached for fraud? The absolute necessity of having some conclusive determination of this matter in advance, in order to make the bonds of any value, is well stated by STRONG, J., in *Venice* v. *Murdock.*

The objections made to the instrument of assent are merely formal and technical; and if a purchaser was bound to examine the record, he could discover no defect or irregularity.

The defendant claims to be excused from paying its bonds, because the Montpelier & St. Johnsbury Railroad has not been built from West Danville to Montpelier. But there was no reference in the charter of either of said railroads to the other. They are totally distinct and independent corporations. If no portion of the Montpelier & St. Johnsbury Railroad had ever been built, it would not affect the liability of subscribers to the stock of the Essex County Railroad. The fact that the two roads are put in the same enabling act, is of no legal consequence. But the time for the completion of the Montpelier & St. Johnsbury Railroad has not expired, and the company has not lost the right to build it. The roads have never been consolidated. The arrangement between the companies was merely for the building and running of the roads. But what had a purchaser of defendant's bonds to do with all this? What did he know about it, what was he bound to know, or inquire into?

The actual completion of the road through the town was not a condition precedent to the issue of the bonds. But if it was, it was a matter for the determination of the selectmen—a matter *in pais*, and a purchaser had a right to suppose the condition had been performed; and the defendant is estopped to deny the authority of its selectmen to issue its bonds.

The plaintiff claims that if there was any difficulty as to the issue of the bonds, when they issued them, the town, its officers, and all its people, could not stand silently by, and see their negotiable paper put into market, and go into the hands of honest purchasers, who paid their money for them, and then refuse payment because the bonds were prematurely issued. The common doctrine of estoppel *in pais* applies. And especially when this continued for five years, and the holders of the bonds supposed the town was paying their interest.

A corporation is as much subject to this doctrine as a private person. *Rogers* v. *Burlington*, 3 Wall. 654, *per* CLIFFORD, J.; *Bissell* v. *Jeffersonville*, 24 How. 287; *Supervisors* v. *Schenck*, 5 Wall. 781; *Pendleton Co.* v. *Avery*, 13 Wall. 297; *Shoemaker* v. *Goshen*, 14 Ohio St. 587; Dillon Munic. Bonds, 52, 53, and

n. ; *Randolph Co.* v. *Post,* United States Supreme Court, October Term, 1876, *per* HUNT, J.

The fact that a part of the bonds were not signed by all of the selectmen, is of no consequence. Our statute authorizes a majority to act. It is said this is a special duty imposed by statute ; but all the duties of selectmen are imposed by statute ; and the Legislature is constantly changing them.

It is claimed that the instrument of assent was not correctly recorded by the town clerk. The differences claimed are of no legal consequence. But if they were, what has a bond-holder to do or to know on that subject ?

It was objected that the County Court had no appellate jurisdiction, because the bonds from which these coupons were taken exceeded in amount the jurisdiction of a justice. It has been held that where a suit is brought to recover an installment of a note, or the interest on a note, if the whole note is beyond the jurisdiction of a justice, he has no jurisdiction of the cause. The reason is obvious. The suit involves, or may involve, the validity and obligation of the whole instrument. But detached coupons are distinct instruments. They may be sued by the holder, though he has parted with, or never owned the bonds. *Kenosha* v. *Lampson,* 9 Wall. 477 ; *Lexington* v. *Butler,* 14 Wall. 282 ; *Clark* v. *Iowa City,* 20 Wall. 583.

*Peck* and *Heywood* and *Harvey,* for the defendant.

A town may be empowered to vote, and by a tax to collect, money in aid of railroads and other public improvements. But the act of March 28, 1867, is unconstitutional in the mode prescribed for binding the town, to wit, without any corporate action by vote. 1. It is not a vote, and is not done in a meeting duly warned. 2. The persons to be appointed are named beforehand in the instrument of assent, and they are to be the commissioners, and no one else, thus leaving no way for choice or selection. 3. Women, guardians, executors and administrators, and corporations, are to sign, and the same person could sign on his own list, on that of his ward, as executor of one estate and administrator

of another, and as director of a corporation. 4. There is no provision for an adjudication by any one as to whether or not the commissioners are elected, and antecedent to having ascertained that fact, they are to adjudicate and decide upon the fact as to whether or not a majority in number and amount of the resident tax-payers have signed and acknowledged the instrument of assent, and on this count their own authority depends. 5. If there is any such thing as a count to ascertain whether the commissioners are elected, it is done indirectly by the commissioners themselves. 6. Important matters that are intended to involve the town in an immense debt, are to be decided by the persons named as commissioners, without a hearing, and in a private manner.

Where the Legislature, by special act, merely empowers the town to impose upon itself a pecuniary obligation, an assent by vote of the inhabitants in town meeting duly warned, or the act of its officers duly chosen for that purpose at such town meeting, is indispensable to the exercise of such power. It cannot be dispensed with by the Legislature. *Montpelier* v. *East Montpelier*, 29 Vt. 12, *per* ISHAM, J. ; 2 Kent Com. 275 ; *Aldis* v. *Lamoille Valley Railroad Co.*, decided at the General Term, 1871 ; *Jones* v. *Goffstown*, 39 N. H. 554 ; Cooley Const. Lim. 117, 197, 230–235 ; *Kingston* v. *Towle*, 48 N. H. 57, *per* PERLEY, C. J., and cases there cited ; *People* v. *Batchelder*, 53 N. Y. 128, and cases there cited ; *Hasbrouck* v. *Milwaukee*, 13 Wis. 37 ; *Hampshire* v. *Franklin*, 13 Mass. 83 ; *Bailey* v. *Mayor, &c. New York*, 3 Hill, 531 ; *Taylor* v. *Porter*, 4 Hill, 140 ; Declaration of Rights, Art. ix ; *Wheelock* v. *Moulton*, 12 Vt. 519 ; *Poultney* v. *Wells*, 1 Aik. 180 ; *Montpelier* v. *East Montpelier*, 29 Vt. 12 ; *Atkins* v. *Randolph*, 31 Vt. 226 ; *Wells* v. *Charlton*, 29 Wis. 411 ; *State* v. *Tappan*, 29 Wis. 672 ; *State* v. *Park*, 26 Vt. 357.

If the act is unconstitutional, the bonds are void, even in the hands of a *bona-fide* holder for value. Dillon Munic. Bonds, s. 19 ; *Ryan* v. *Lynch*, 68 Ill. 160 ; *Lowell* v. *Boston*, 111 Mass. 454 ; *Loan Association* v. *Topeka*, 20 Wall. 655 ; *Harsham* v. *Bates Co.* 2 Otto, 569 ; *Concord* v. *Sav. Banks*, 2 Otto, 625 ; *Ottawa* v. *Perkins*, 4 Otto, 261 ; *McClure* v. *Oxford*, 4 Otto, 429 ; Cooley Const. Lim. 188.

When a statute confers a special power, and prescribes the mode of its exercise, the mode is matter of substance and must be strictly followed. The act provided that the towns might " aid, in the construction of the Montpelier and St. Johnsbury and the Essex County Railroads." If it was not necessary to the validity of the subscription that it be to both companies, still, it should have been expressed in the instrument of assent that the subscription was to be in aid of both roads, and it should have been so stated in the subscription. Therefore, the whole is void. *Indiana N. & S. Railroad* v. *Attica*, 4 Am. Law Times, 377; *McClure* v. *Oxford*, 4 Otto, 429; *Essex Co. Railroad Company* v. *Lunenburgh*, decided at the General Term, 1876.

The instrument of assent is incomplete in not stipulating as to interest, and fatally defective in not having each signature of assent dated. Whatever the act required the instrument of assent to contain should have been expressed in words, or, where number was to be stated, in words, or figures with words to give them application to the subject intended; and in view of the importance of the instrument, and the effect given to the record thereof by the act, nothing short of that ought to be held sufficient. The substitution of dots for dates, was not a compliance with the requirement of the act. *Clark* v. *Stoughton*, 18 Vt. 50; *State* v. *Jericho*, 40 Vt. 121, *per* ROYCE, J. The want of dates is not supplied by the certificates of acknowledgment, as they are dated only by reference to the day named against each signature. Besides, by the statute, it is only " when any instrument of assent * * * shall have been signed and acknowledged by the majority, in the manner * * * required," that the commissioners are authorized to append a certificate. Not the certificate alone, but the *instruments* and certificates, *executed and recorded* in conformity to the act, were to be conclusive evidence of the facts therein stated. If the instrument of assent was not executed in compliance with the statute, the whole proceeding is invalid. But if not entirely invalid, it appears that a majority of the signers of the instrument of assent executed it so defectively that they cannot be counted as assenting, notwithstanding the certificate of the commissioners. But if the court should be of the opinion that

the instrument of assent appeared on its face so far to answer the requirements of the statute as to authorize the commissioners to act, then the certificate of the commissioners is not in substance as required by the act.    It finds that the instruments are signed by a majority of the persons resident in the town, paying taxes, both in number and amount of grand list in said town in force at the time the first certificate of assent was made, and that therefore it was signed and acknowledged by the majority required in the act.    It should have stated the facts.    The court could then have seen whether the law had been complied with.    The certificate in no way concludes the town.

But the instrument and certificate were not fully and truly recorded as required by the act.    Such recording was a condition precedent to the making of any contract by the commissioners. The bonds are therefore void.    *Essex County Railroad Co.* v. *Lunenburgh, supra; Carpenter* v. *Sawyer,* 17 Vt. 121 ; *Perry* v. *Whipple,* 38 Vt. 279 ; *County of Dallas* v. *McKenzie,* 4 Otto, 660.

The act appoints no board, officer or person to decide and certify whether its requirements have been complied with ; but leaves it an open question.    Every person who purchases a municipal bond issued thereunder must take notice of the provisions and requirements of the act, and take notice whether such conditions precedent have been complied with ; he is charged with notice of what by reasonable diligence and inquiry he could have learned, and with notice of what the public records, required by the act, would show.    An examination of the records in the town and county clerk's office would have disclosed the fact of the want of such instruments and records as the act required.    The fact, therefore, that the plaintiff is in fact a holder for value without notice cannot avail him.    Cooley Const. Lim., 196, 215 ; *Gould* v. *Sterling,* 2 N. Y. 456 ; *McClure* v. *Oxford,* 4 Otto, 429 ; *Swift* v. *Williamsburgh,* 24 Bar. 427 ; *Marsh* v. *Fulton Co.* 10 Wall. 683 ; Floyd Acceptances, 7 Wall. 676 ; *Carpenter* v. *Sawyer,* 17 Vt. 121 ; *Perry* v. *Whipple,* 38 Vt. 279 ; *Marsh* v. *Fulton Co.* 10 Wall. 676.    The act appoints no board, officer, nor person, to decide and certify whether its requirements have been complied with ; but leaves it an open question.    Every person who pur-

chases a municipal bond issued under such special statutes, must take notice at his peril of the provisions and requirements of the acts, and whether conditions precedent have been complied with. He is chargeable with notice of what he could have learned by reasonable diligence and inquiry, and of what the public records required by the act would have shown. An examination of the records in the town and the county clerk's office would have disclosed the fact of the want of such instruments and records as the act required. That the plaintiff is in fact a holder for value without notice, cannot avail. Cooley Const. Lim. 196, 215; *Gould* v. *Sterlin*, 2 N. Y. 456; *McClure* v. *Oxford*, 4 Otto, 429; *Swift* v. *Williamsburgh*, 24 Barb. 427; *Marsh* v. *Fulton Co.* 10 Wall. 683; 7 Wall. 676; *Carpenter* v. *Sawyer*, 17 Vt. 121; *Perry* v. *Whipple*, 38 Vt. 279.

The act required the bonds to be signed by the selectmen, and countersigned by the treasurer. That duty was not to be performed by the selectmen by force of their office. They should all have signed the bonds. *Danville* v. *Montpelier & St. Johnsbury Railroad Company*, 43 Vt. 144, 154.

But the undertaking that the town was authorized to aid was abandoned. The town was thereby released. *Union Locks & Canal Co.* v. *Towne*, 1 N. H. 44; *Middlesex Co.* v. *Lock*, 8 Mass. 268; s. c. 10 Mass. 384; *H. & N. R. R. Co.* v. *Crosswell*, 5 Hill, 385; *Stevens* v. *The R. & B. R. R. Co.*, 29 Vt. 545; *Harshman* v. *Bates Co.* 2 Otto, 568; *Marsh* v. *Fulton Co.* 10 Wall. 676.

As the coupons were not signed by the selectmen, the town cannot be held in an action thereon, the plaintiff not owning the bonds.

It cannot be claimed that the defendant is estopped. The officers who issued the bonds were not authorized to judge whether or not all the precedent conditions had been complied with, nor did the bonds recite such compliance. *Coloma* v. *Eaves*, 2 Otto, 491; *Macy* v. *Oswego*, 2 Otto, 637; *Humboldt* v. *Long*, 2 Otto, 642; *Dallas* v. *McKenzie*, 4 Am. Law Times, 80. And it makes no difference that the inhabitants of the town knew that the bonds were being issued. There was no acquiescence on the part of the town, or of its inhabitants. *Marsh* v. *Fulton Co.* 10 Wall.

First Nat. Bank of St. Johnsbury v. Town of Concord.

676 ; *Rochester* v. *Alfred Bank,* 13 Wis. 432 ; *Ryan* v. *Leach,* 68 Ill. 160.

The opinion of the court was delivered by

Ross, J. Upon the facts found and reported by the referee the able counsel for the defendant have urged with much skill and force various objections to the right of the plaintiff to recover.

While conceding the general power of the Legislature to authorize municipalities to aid in the construction of railroads, they contend that the act of March 28, 1867, under which the defendant acted or attempted to act, " is unconstitutional in the mode prescribed for binding the town, to wit, without any corporate action by vote." They particularize their objections as follows : " 1. It is not a vote, and is not done in a meeting duly warned ; 2. The persons to be appointed are named beforehand in the instrument of assent, and they are to be the commissioners, and no one else, thus leaving no way for choice or selection ; 3. Women, guardians, executors and administrators, and corporations are to sign, and the same person could sign on his own list, on that of his ward, as executor of one estate and administrator of another, and as director of a corporation ; 4. There is no provision for an adjudication by any one as to whether or not the commissioners are elected, and antecedent to having ascertained that fact, they are to adjudicate and decide upon the fact as to whether or not a majority in number and amount of the resident tax-payers have signed and acknowledged the instrument of assent, and on this count their own authority depends ; 5. If there is any such thing as a count to ascertain whether the commissioners are elected, it is done indirectly by the commissioners themselves ; 6. Important matters that are intended to involve the town in an immense debt, are to be decided by the persons named as commissioners, without a hearing, and in a private manner." Most of these objections are not new, nor for the first time brought to the attention and consideration of this court. The constitutionality of this act, and the substance of the objections now made, were, very soon after the passage of the act, brought for adjudication before Judge Peck as Chancellor in the case of *Daniel Goodall et als.* v. *L. P*

*Poland et als.,* on a bill asking that the defendants might be enjoined from making a subscription on behalf of the town of St. Johnsbury. The injunction, after full hearing, was denied, and the case ended in the Court of Chancery. In *Danville* v. *The Montpelier & St. Johnsbury Railroad Company et als.* 43 Vt. 144, and in *The Essex Co. Railroad Company* v. *The Selectmen and Treasurer of Lunenburgh,* 49 Vt. 143, the constitutionality of this act was fully discussed, and was considered by the court. Although its constitutionality is not discussed in the opinions in those cases, it is assumed, in that the decisions were turned upon points the consideration of which would have been unnecessary if the court had adjudged the act unconstitutional. Acts almost identical in their main provisions and so far as this question is concerned, have been before this court and held to be constitutional in the unreported case of *Aldis et als.* v. *Lamoille Valley R. R. Co. et als.,* commonly known as the Swanton case, heard and decided at the General Term of this court, 1871, and in the *Town of Bennington* v. *T. W. Park et als.,** heard and decided at the present term. After the full, elaborate, and so recent discussion of the constitutionality of this class of acts, and of the objections taken by the defendants' counsel in the last-named case, it would be entirely out of place to attempt any extended discussion of them in this case. It may however be stated that a majority of this court hold, as is generally if not now uniformly held by the highest courts of other States and of the United States, that railroads are improved highways demanded by the necessities of the age and of the public—properties created and permanently set apart and devoted to a public use—that because they are of this character and nature, the State can exercise in their behalf the sovereign right of *eminent domain ;* can construct, own, and operate them, though it necessitates the levying of direct taxes upon its subjects ; or can commit their construction and operation to corporations created for these purposes, whose stockholders derive an individual benefit therefrom ; that towns are but municipal subdivisions of the State, carved out of

* *Ante,* p. 178.

and created by it for the better and more convenient management of its affairs, and for the government of its subjects and the promotion of their interests, with no inherent or inalienable rights except such as are reserved by the Constitution ; that by it the right to constitute towns is conferred upon the Legislature, and the only absolute right it reserves to towns is that of selecting from its inhabitants a member of the House of Representatives, so that it may have a voice in the enactment of every law affecting its own and the welfare of the State ; that its officers, their appointment, powers, and duties, the class of its inhabitants who may have a voice in the control of its affairs, as well as the mode in which it shall be expressed, the duties which it must and which it may perform for the welfare of the public at the expense of its inhabitants by enforced taxation, as well as the property on which, and the methods by which, the enforcement may be made,—is all, except so far as limited by the Constitution, entrusted to the Legislature to prescribe and alter at will ; and hence the act of March 28, 1867, though it conferred new rights and powers upon the defendant town, which, if exercised, would impose new duties upon its inhabitants, and prescribed—departing somewhat from former precedents in this respect—who of its inhabitants could exercise these rights and powers so as to bind the town, and the manner in which it must be done, is not unconstitutional.   Its passage was but the exercise—whether wisely or unwisely is not for this court to decide—of the power inherent in the Legislature, of which the defendant formed a part through its representative. The objections urged by the defendant's counsel assume that from some source unexplained because incapable of explanation, towns have a certain indefinable right to act in a given way by vote in a regularly warned town meeting, higher than the power of the Legislature from which it receives its existence and all its powers, and over which the Legislature has no control ; or that the creature has powers other and higher than those conferred by its creator.   The statement of the proposition suggests its fallaciousness. The very right claimed, viz., to act by vote in a regularly warned town meeting, is conferred and regulated by the Legislature.   So too the officers who are to preside over some such meetings, guide

their deliberations, declare and record the result, even in some cases it may be their own election, are prescribed by the Legislature. Because the Legislature has been accustomed generally to prescribe a particular way for towns to act and determine their action, it is not therefore limited to that one way.

The ninth article of the Declaration of Rights, cited by defendant's counsel, that " no part of any person's property can be justly taken from him, or applied to public uses, without his own consent, or that of the representative body of the freemen "; and that, " previous to any law being made to raise a tax, the purpose for which it is raised ought to appear evident to the Legislature to be of more service to the community than the money would be if not collected,"—is not infringed by the act in question. " The representative body of the freemen " passed, in the passage of the act, upon the expediency of conferring the powers named in the act upon the defendant, and of the manner in which its inhabitants should exercise that power, and left to a majority of the resident tax-payers, both in number and amount of grand list, the determination of whether the purpose for which the tax was to be raised was of more service to community than the money would be if not collected. On general principles as well as the adjudged cases, we think the act is constitutional, and that the defendant was clothed with the power to aid in the construction of the enterprise named in the act.

II.    It is claimed that the first section of the act, which empowered the towns therein named " to aid in the construction of the Montpelier and St. Johnsbury and the Essex County Railroads," &c., confined the defendant to giving aid, if at all, to both of the roads named. This language is to be construed with reference to the then existing state of affairs. Each of these roads had then been incorporated. The towns empowered to grant the aid, were partly on the line of one of the roads and partly on that of the other. The corporations were distinct and separate, and had no common stock or bonds which the towns could subscribe for, purchase, or guarantee the payment of. Whatever aid was thus authorized, must be furnished to each road separately.

We think it a forced construction of the language of the act, to hold that the towns named were empowered to furnish aid to both of the roads named, and could not aid one without also aiding the other, and that the intention of the Legislature and the fair interpretation of the language of this section, empowered the towns to aid either or both of the railroads named.

III. The defendant claims, because it is found that the Montpelier & St. Johnsbury Railroad Company has abandoned the building of a part of the line included in its charter, that there has been such abandonment of the enterprise to which the defendant subscribed as to render its subscription void. The referee does not find that such abandonment was made before the defendant issued the bonds from which the coupons for which recovery is sought, were taken. It is not evident how such abandonment, made after or before the bonds were issued, could affect the right of recovery of the *bona-fide* holder for value. The subscription of the defendant was to the stock of the Essex County Railroad Company, which was authorized to build a railroad from the Connecticut River, in Essex County, to connect with the Connecticut and Passumpsic Railroad in St. Johnsbury. None of this enterprise to which the defendant alone subscribed has been abandoned. If it would have made it a condition on which the validity of its subscription depended, that the Montpelier & St. Johnsbury Railroad Company should also build its road to Montpelier, it should have embodied it in its subscription. All agreements, understandings, and conditions not inserted in the subscription are made of no effect by s. 5, c. 28, Gen. Sts.

IV. The act of March 28, 1867, in conferring upon the defendant the power to aid in the construction of the Essex County Railroad by subscribing for its stock, provides that such subscription may be made " when the assent in writing thereto of a majority of those paying taxes, both in number and amount of the grand list then in force, shall first be obtained by an instrument of assent," dated, signed, and acknowledged, and specifying the grand list of the person assenting, and the substance of the

contract on which the subscription is to be made. It also provides that the assent of no tax-payer shall be binding or counted in ascertaining the majority, unless the majority is obtained within six months from the date of the first certificate of assent; that in determining the majority, non-resident tax-payers and their lists shall be excluded; that the purchaser of real estate conveyed subsequently to the taking of the grand list, may assent for the same; and that the instrument of assent shall name three resident citizens and tax-payers who shall be commissioners to execute the subscription. It also provides that when such a majority is obtained to the instrument of assent, the commissioners shall append thereto a certificate, subscribed and sworn to, " stating that the assent has been signed and acknowledged by such a majority as is required by the act; " that they shall be sworn before entering upon their duties, and shall cause the instrument of assent, certificate of majority and of their oath, to be filed and recorded in the town clerk's office, and a certified copy therefrom in the county clerk's office, and that " such instruments and certificates so executed and recorded, shall be conclusive evidence of the facts therein stated." The defendant's counsel insist that the plaintiff is not entitled to recover, because they contend that some of these conditions precedent to the right of the town to act, or of the commissioners to bind it, have not been complied with. It is found by the referee that the plaintiff is a *bona-fide* holder for value of the coupons upon which recovery is sought, a fact which has an important bearing upon most of the defendant's objections under this head. The Supreme Court of the United States, in *Knox County* v. *Aspinwall*, 21 How. 539, and numerous subsequent decisions, has established, as well stated by Judge DILLON in his work on the Law of Municipal Bonds, that " if upon a true construction of the legislative enactment conferring the authority, the corporation, or certain officers, or a given body or tribunal, are invested with power to decide whether the condition precedent has been complied with, then it may well be that their determination of a matter *in pais* which they are authorized to decide will, in favor of the bondholder for value, bind the corporation." In determining whether the majority required by the act under dis-

First Nat. Bank of St. Johnsbury *v.* Town of Concord.

cussion had been obtained, who were non-resident tax-payers, who subsequent purchasers of real estate, who administrators, guardians, &c., and many other things, were matters *in pais*, committed to, and necessarily decided by, the commissioners. But the act goes further than to entrust the decision of these matters *in pais* to the commissioners. It declares that their decision as set forth in their recorded certificate shall be conclusive. In *Aldis* v. *Lamoille Valley Railroad Company et als.*, this court held the recorded certificate of the commissioners conclusive in regard to the fact whether the requisite majority had been obtained. In that case the proceeding was in behalf of tax-payers against the railroad company and officers of the town, to prevent the issue of the bonds. Much more in the case at bar, which is in favor of a *bona-fide* holder for value, should their certificate be held conclusive of this fact. If every holder of a bond seeking to enforce its collection was by law required to go into all these matters resting *in pais*, and show that the requisite majority had been obtained, very little aid would the railroad company receive from the delivery by the town of its bonds, as no person would be found rash enough to invest in them. Such holding would defeat the very object of the act. The objections taken in regard to whether the requisite majority assented, must be held to be concluded by the recorded certificate of the commissioners.

The objection that the instrument of assent did not set forth the substance of the contract to be entered into by the town, in that it did not specify the rate of interest which the bonds of the town should bear, except that it should not exceed seven per cent., is untenable. The law fixes the rate of interest where none is specified in the contract. The town, by the instrument of assent and subscription having fixed the limit which the rate should not exceed, and by assuming to act under the act, having cast the duty of issuing the bonds in payment of its subscription upon its selectmen and treasurer, impliedly authorized them to fix the rate of interest within the limits prescribed. At least, these officers having fixed the rate, executed the bonds, made a record of them in the town clerk's office, issued and allowed them to be put upon the market, it is now too late to raise this objection, or that a

vote of the town fixing the rate was necessary, against a *bona-fide* purchaser for value.

The same, substantially, may be said in answer to the objection that the bonds were prematurely issued, and before the road was completed as required by the subscription. The duty of issuing the bonds was by the act cast upon the selectmen and treasurer. Of necessity they must judge when they were required to perform that duty. The town was also cognizant of the fact that they were being issued, and took no steps to prevent it. It did not speak when it might, and must now be silent when payment is demanded by a purchaser for value.

We think the objection to the insufficiency of the certificate of the commissioners is without foundation. The insertion of the word " as " before the word " signed," renders it somewhat inartificial in expression, but does not affect its manifest meaning and the construction to be placed upon it.

It is further objected that the record both in the town clerk's office and in the county clerk's office is defective, and that as the making of these records is a condition precedent to the making of the subscription, no valid subscription has been made. The defects principally relied upon are the failure to record but one of the instruments of assent, and the fact that the copy lodged in the county clerk's office is certified by the town clerk to be a copy of the record in his office, rather than a copy of the original documents. The assent was obtained by the circulation of seven printed instruments, all exactly alike in contents, to which signatures were obtained. No one of these as signed was of any validity to bind the town. It took the signatures to all these to make the requisite majority. They were all filed with the certificate of the commissioners and their oath attached in the town clerk's office. The town clerk recorded but one of the printed instruments, and recorded the signatures, acknowledgments, &c., of the others as if they were attached to this one. Nothing in substance would have been added if he had transcribed on the record each one of the printed forms. We think the record as made was a substantial compliance with the requirements of the act. It furnished all the required information to the inhabitants

of the town, and to purchasers of the bonds, and preserved as a record the instrument of assent with all its provisions and conditions, together with the signatures and acknowledgments of those who executed it. To have added the other printed forms would have added nothing to the legal effect of the record. If the record were defective, it might well be questioned whether the town could make such defects, occasioned wholly by the default of its town clerk, for whose acts it is responsible, available as a defence to a suit by an innocent holder of its bonds, especially after it had, with at least constructive knowledge of the defects, allowed the bonds to be issued and put upon the market for sale. But the decision is not placed upon this ground, as we hold the record as made in the town and the county clerk's office a sufficient compliance with the act. I am informed by my associates who sat in *Essex Co. R. R. Company* v. *Lunenburgh, supra*, that such was the holding in that case, where a similar method of recording was adopted.

It is claimed that the plaintiff is not entitled to recover because the coupons are signed by the town treasurer alone, and because some of them were taken from bonds signed by only two of the three selectmen. The act is silent in regard to the execution of the coupons. It is not therefore a violation of, nor a non-compliance with, the act, that they are not signed by the selectmen. The bonds provide for the payment of interest. The coupons only re-express this liability. In the absence of any provision of the act regulating their execution, the signature of any town officer, or any execution, by which they can be unmistakably identified as a part of the bond from which they are taken, is all that is necessary. This is accomplished by the signature of the town treasurer. The duty of signing the bonds is imposed upon the selectmen in their official capacity. The Gen. Sts. c. 15, s. 92, make the acts of a major part of the selectmen as valid as though executed by the whole board.

From the records in the town and the county clerk's office, it appears that they were made before the execution of the subscription by the commissioners. This is all that was necessary to be shown by the plaintiff, although the act requires that these records

should be made before the commissioners execute the subscription. An innocent purchaser of the bonds for value would, at most, only be required to examine the records themselves, to ascertain how that fact was. If from the records themselves it appeared that they were made before the subscription was executed, he may safely conclude the fact to be so, without further examination or inquiry, and safely make the purchase. The town, constructively, at least, if not actually, through its officers, charged with knowledge of how this fact appeared from the records, cannot lie by and see its bonds issued, put upon the market, and a record made of them in its clerk's office, and then avoid its liability because its officer, charged with the duty of making the record truly, has made a false record, and so mislead the purchaser. It falls within the principle heretofore cited as having been established by the U. S. Supreme Court.

By s. 1 of No. 172 of the acts of 1868, it was made the duty of the selectmen of the defendant, in the absence of the appointment of a special agent for that purpose, to manage, control, vote on, &c., the stock subscribed for. It is found by the referee that the selectmen of the defendant voted on the stock subscribed and paid for by it, at the annual meetings of the railroad company for 1871 and 1872 ; that the issue of the bonds began in 1871, and continued to 1876 ; that a record of the same was made by the town clerk ; that coupons from the bonds were paid by the railroad company, and returned to the town treasurer ; and that the town treasurer took receipts from the railroad company for the bonds as they were delivered. From these acts of the town and its officers, it may be questioned whether the town did not acquiesce in and ratify the bonds, and waive any irregularity or informality which occurred in their issue. But it is unnecessary to decide this point. For other reasons already indicated, the *pro forma* judgment of the County Court must be reversed, and judgment rendered for the plaintiff to recover the amount of the coupons reported, with interest and costs.

BARRETT and DUNTON, JJ., dissent.