ESSEX COUNTY RAILROAD CO. *v.* THE SELECTMEN AND TREASURER OF THE TOWN OF LUNENBURGH.

*Mandamus.    Town  Aid  to  Railroads.*

By act of the Legislature, the town of which the petitionees were officers, was authorized to aid in the construction of petitioner's railroad, by subscribing for stock thereof. The act provided that the subscription might be made when the "assent thereto of a majority of those paying taxes, both in number and amount of the grand list then in force," had been first obtained, by an "instrument of assent," signed and acknowledged by each person so assenting, and setting forth the conditions on which the subscription should be made; that such instrument should name three commissioners to make said subscription in the name of the town; and that when said instrument should have been signed and acknowledged by such majority, said commissioners should append thereto a certificate, stating that such assent had been signed and acknowledged by such majority, and should cause such instrument and certificate to be filed and recorded in the town clerk's office, and a copy of such instrument and certificate lodged and recorded in the county clerk's office, and that until said records should be made, such commissioners should not proceed to make any subscription on behalf of the town. The instrument of assent was procured and certificate appended, and the subscription made, to be paid in bonds of the town; but said instrument and certificate, though filed in the town clerk's office before, were not recorded, nor any copy thereof either recorded or lodged in the county clerk's office, until after the subscription was made. *Held,* that the commissioners had no authority to make a subscription either conditional or absolute, without first causing said instrument and certificate to be both filed *and recorded* according to the terms of the act; that the filing alone would not, as in case of deeds, have the same effect as recording; and that therefore mandamus could not be properly issued, commanding petitionees to execute and deliver bonds of the town in payment of the stock subscribed for.

PETITION FOR MANDAMUS to compel the petitionees to make, sign, issue, and deliver to the petitioner, notes or bonds of the town of Lunenburgh, to the amount of $50,000, in payment for

stock to that amount in the petitioner's railroad, subscribed for by said town, in pursuance of an act of the Legislature, passed at a special session held in March, 1867, authorizing and empowering said town to make such subscription in aid of the construction of said road, and specifying the manner, conditions, and preliminary proceedings in and under which said subscription should be made in order to be binding upon the town. The act provided that the subscription might be made when the " assent thereto of a majority of those paying taxes, both in number and amount of the grand list then in force," had been first obtained by an instrument of assent, signed and acknowledged by each person so assenting, and setting forth the conditions on which the subscription should be made ; that such instrument of assent should name three persons as commissioners to make said subscription in the name of the town ; and the act further provided as follows : "When any instrument of assent, herein provided for, shall have been signed and acknowledged by the majority, in the manner hereinbefore required, the commissioners named in such instrument shall append thereto a certificate by them subscribed and sworn to, stating that such assent has been signed and acknowledged by such majority as is required by this act, and shall cause such instrument of assent and such certificate to be filed and recorded in the town clerk's office of such town, and shall also cause a copy of such instrument and certificate, certified by the town clerk of such town, to be lodged and recorded in the county clerk's office, in the county in which such town is situated ; and until said records are made, such commissioners shall not proceed to make any contract, subscription, or purchase on behalf of said town." The petition alleged that the instrument of assent was procured and duly recorded, and all other preliminary requirements of the act complied with ; that the subscription was duly made according to the provisions of the act; and that the town was bound by the subscription to issue the bonds of the town, but refused, through its officers, the petitionees, to issue them, as authorized by the act and required by the terms of the subscription. The answer alleged, among other things, that the subscription was not valid nor binding, for that the written instrument of

assent and the certificate thereto appended were not filed and recorded in the town clerk's office, nor a true copy thereof lodged and recorded in the county clerk's office in the County of Essex, as required by said act, before said subscription was made. It appeared in evidence, and was virtually conceded, that though the instrument of assent and certificate were filed in the town clerk's office before, they were not recorded, nor any copy thereof either lodged or recorded in the county clerk's office, until after, said subscription was made.

*L. P. Poland*, for the petitioner.

The same principle should govern under this act, that governs in the recording of deeds. Our statute of conveyances provides that " no. deed, &c., shall be good and effectual in law to hold such lands against any other person but the grantor and his heirs only, unless the deed or other conveyance thereof be acknowledged and recorded," &c. It is settled that if a prior deed be duly filed in the office for record, any subsequent deed of the same land is subject to it, although the second grantee purchases with no actual knowledge of the first conveyance, and the first deed is not spread upon the record. But there is far more reason for applying the principle to the act in question, than to the general law. The object of the law requiring all conveyances of real estate to be recorded is, to secure a full and complete record of the title for the safety of the owner, and enable purchasers and creditors to ascertain by examination of the record, whether there has been any change of title.

In the act in question, the recording is not for any purpose of notice, but for the purpose of preserving the evidence of the authority of the commissioners to contract for the town. The subscription was to be paid in bonds having a long time to run, and the evidence might be lost, and therefore they required a record in two offices. But conceding that the assent proceedings were not recorded before subscription was made, they were recorded long before the subscription contract became operative and binding between the parties. The subscription contained many conditions, specified in itself and in the instrument of assent. It was

not a contract between the parties until it was accepted by the railroad company.

It was not settled until April 22, 1871, that the road would be located through the town of Lunenburgh, and the subscription and its conditions could not be accepted until that was decided. This was done on the 22d day of April, 1871, and the subscription accepted on the same day. The subscription then became operative and complete ; before that it was a mere proposition or offer, unaccepted.

*Heywoods* (*Asahel Peck* with them), for the petitionees.

It was essential to the power of the commissioners to make the contract, that the assent, or a copy thereof, should be first recorded. The act makes such recording a pre-requisite in these words : " And until said records are made, such commissioners shall not proceed to make any contract, subscription, or purchase, on behalf of said town." It is said that when a document is filed for record, the recording is referred to the time of the filing, and that it makes no difference when it is actually written upon the book. It is so in many cases, and particularly in the recording of deeds ; but in many other cases it is not so, and the difference arises upon the construction of statutes.

Under the old pauper law as to the warning-out process, it was required that process and return should be recorded by the town-clerk within one year. In *Pawlet* v. *Sandgate*, 17 Vt. 619, return was made two days after service, as appeared by certificate of the town clerk, but because record was not actually made within the year, it was held that the statute was not complied with. The act of Nov. 11, 1807 (Slade's Comp. 667, s. 3), requires the collector of a land-tax to cause the return of his proceedings to be recorded in the town clerk's office within thirty days after completing his sale. In *Taylor* v. *French*, 19 Vt. 49, this was not done, and the sale was held to be void. In *Chandler* v. *Spear*, 22 Vt. 388, it is treated, both by court and counsel, that the proceedings of the tax-sale should be recorded within the thirty days ; and it is evident that the court would have held the sale void if they had found that the record was not so made.

*Carbee* v. *Hopkins*, 41 Vt. 250, goes upon the ground of *Chandler* v. *Spear*, and shows that the recording within the thirty days was essential. See also *Richardson* v. *Dorr*, 5 Vt. 9 ; *Sumner* v. *Sherman*, 13 Vt. 609.

So in the case of the levy of an execution upon land ; the execution and return must be actually recorded in the office of the clerk, within the life of the execution, or the levy will be void. To file it is not sufficient. *Perrin* v. *Reed*, 33 Vt. 62 ; *Little* v. *Sleeper*, 37 Vt. 105 ; *Willard* v. *Whipple*, 40 Vt. 219 ; *Oatman* v. *Fowler*, 43 Vt. 462. ·

This proceeding is under an act passed for a special purpose, and is of an extraordinary character, and we have a right to insist that full authority should be shown to have existed in the agents, before the town will be held liable. In the case of *Langdon* v. *Poor*, 20 Vt. 13, it was held that in so unimportant a matter as making the advertisement for the land-sale, the collector must be first sworn before advertising ; and because he was not, the sale was held void. *Coit* v. *Wells*, 2 Vt. 318 ; *Bellows* v. *Elliott*, 12 Vt. 569.

If strict compliance with the statute as to record should be required in those cases, it is plain that a strict compliance in that respect should also be required in this.

But there are other reasons in the present case for holding that no binding contract could be made by these commissioners until the document that gave them authority to act, was recorded as required by law. Every tax-payer, every citizen of the town, had a right to rely upon the plain terms of the statute in this respect. A glance at the statute shows that very important questions might arise, questions of domicile, questions as to the correctness of computations made by the commissioners, questions as to their accuracy in individual cases, as well as in the general result. The object of requiring the papers to be recorded was, to furnish a certain and specific mode and opportunity of inspection to the tax-payers, whereby errors might be detected and their rights preserved. If recording the paper a week or a month after the contract is made, cures the defect, recording it a year or ten years afterwards must have the same effect ; and it follows that this un-

equivocal requirement of the law, may, to all practical intents, be altogether dispensed with. Upon authority and reason, a strict compliance with the terms of the statute must be shown ; and this contract, made in plain violation of the law, because made before the assent was recorded as required by the law, is utterly nugatory, and of no binding force. *People* v. *Smith*, 45 N. Y. 781.

When a statute expressly prohibits a thing until another has been done, the statute is mandatory, and cannot be disregarded. *Slayton* v. *Huling*, 7 Ind. 144 ; *Manufacturing Company* v. *Lathrop*, 7 Conn. 550 ; *Pond* v. *Negus*, 3· Mass. 232 ; *People* v. *Allen*, 6 Wend. 486 ; 46 N. Y. 42; Smith on Statutes, 790, *et seq.*; 2 Cranch, 127 ; 4 Ib. 43, 403 ; 9 Ib. 64 ; *Calvin* v. *Haydon*, 1 Vt. 359 ; *Bellows* v. *Elliott*, 12 Vt. 569 ; Cooley on Taxation, 212, *et seq.*; *Clark* v. *Rochester*, 13 How. 204 ; *Davison* v. *Gill*, 1 East, 64 ; *Bigelow* v. *Stearns*, 19 Johns. 39 ; *Hollenbeck* v. *Fleming*, 6 Hill, 303 ; *Schneider* v. *McFarland*, 2 Comst. 459 ; *People* v. *Reed*, 5 Denio, 554 ; *People* v. *Morgan*, 55 N. Y. 587.

The opinion of the court was delivered by

PIERPOINT, C. J. This is a petition for a mandamus to be issued by this court, commanding the said selectmen and treasurer to make, sign, and issue notes or bonds of the town of Lunenburgh, to the amount of fifty thousand dollars, to be delivered to the petitioner in payment of stock to that amount in the petitioner's road, subscribed for by the said town of Lunenburgh, in pursuance of an act of the Legislature of this state, passed at a special session thereof held in March, 1867, authorizing and empowering said town so to do, in aid of the construction of said road, and specifying the manner, conditions, preliminary proceedings, &c., in and under which said subscription should be made, to make it binding upon said town.

The petition alleges that all the requirements of the statute were complied with; that the subscription was duly made, according to the provisions of the statute, for fifty thousand dollars of the said stock ; that the town was bound by said subscription, but refuses to issue its bonds, through its officers, the petitionees,

as authorized by the statute, and required to do by the terms of the subscription.

The defendants, in their answer, by way of defence, allege, among other things, that no subscription for stock in said railroad has ever been made that is valid and binding upon the said town or its said officers, for the reason that the written instrument of assent thereto of a majority of the tax-payers, both in number and amount of the grand list then in force in such town, required to be obtained by said act of the Legislature, had not been filed *and recorded* in the town clerk's office of said town of Lunenburgh, nor a copy thereof *lodged and recorded* in the county clerk's office in the County of Essex, as required by said act. This would seem naturally to present the first question for consideration.

The proof shows, and it is virtually conceded, that the instrument of assent was filed in the town clerk's office before the commissioners made the subscription, but that it was not recorded until afterwards. It is also conceded, that a copy of the instrument was not lodged nor recorded in the county clerk's office until after the subscription was made. What is the effect of this omission upon the validity of the act of the commissioners in making the subscription? The act provides, that "when any instrument of assent herein provided for shall have been signed and acknowledged by a majority in the manner hereinbefore required, the commissioners named in such instrument shall append thereto a certificate by them subscribed and sworn to, stating that such assent has been signed and acknowledged by such majority as is required by this act, and shall cause such instrument of assent and such certificate to be filed and recorded in the town clerk's office of such town, and shall also cause a copy of such instrument and certificate, certified by the town clerk of such town, to be lodged and recorded in the county clerk's office in the county in which such town is situated; and until such records are made, such commissioners shall not proceed to make any contract, subscription, or purchase on behalf of said town."

It is to be observed that the power conferred upon the town by this act is an extraordinary power. Without the act, neither the town in public meeting nor by its officers, has any authority to

bind itself by a subscription for railroad stock. Such an act is outside of the legitimate scope of its municipal power. When the Legislature confers this extraordinary power, it may impose such conditions upon its exercise as it chooses ; and such conditions must be complied with, as the power depends upon it. In this case, the Legislature has said that the commissioners shall not make a subscription until the conditions are complied with. This is not directory, it is mandatory. The language is prohibitory ; and by its explicit terms, the commissioners have no authority to subscribe until they have caused the instrument of assent and their certificate to be spread upon the record. It is not sufficient to put it on file. The act requires it to be filed *and recorded*. The preservation of such a piece of evidence is of great importance, especially to the railroad company ; and the Legislature saw fit to require the commissioners to put it in a state of preservation, before they exercised any authority under it to bind the town — not put it on file and trust to chance for its getting onto the records, where, perhaps, a large part of the people would be opposed to its going.

The requirement is not an idle nor a useless one. It imposes no hardship, and if hardship ensues, it is the result of the neglect of a plain and obvious duty imposed by the statute. But it is urged that the court should put the same construction upon this statute as is put upon the statute requiring deeds to be recorded, to give them effect as against third persons, that is, that the filing of the instrument in the town clerk's office for record, shall have the same effect as the actual recording. But the cases are not parallel. In the latter case, the sole object of the statute is, to give notice to the world of the existence of the instrument ; and our courts have always held that such notice is as effectually given by putting the instrument on file, where it is open to the inspection of the world, as by spreading it upon the record. The recording in such case has no effect upon the validity of the instrument as between the parties to it. The parties being competent to contract, and having executed the instrument, are bound thereby, whether the instrument is recorded or not. It is not so in this case. Here, the record is of the essence of the contract

itself. Without it, the commissioners have no power to make the contract. The statute expressly declares that they shall not enter into any contract to bind the town, until the instrument of assent is filed and recorded in both the town and the county clerk's office. The case stands the same as though the records had never been made.

It is said that the subscription was a conditional one, and not binding until accepted by the railroad company. If this be so, the commissioners had no more power to make a conditional subscription than an absolute one. If the town can be made liable at all, it must be by force of the subscription made by the commissioners when they had no legal authority to make it. This being so, this court cannot by mandamus order the defendants, officers of the town, to execute and issue the bonds of the town in payment of said subscription, and the petition is dismissed with cost.

This view of the case renders it unnecessry for us to consider the other questions that have been presented and discussed in the argument.