Daniels, J.
No formal charges were made against the relator, and no opportunity was afforded him to be heard before the commissioners, as that was provided for by section 38, chapter 335, of the Laws of 1873, before the resolution for his removal was adopted ; and if the case is governed by the provisions contained in *419 that section his removal was unauthorized (People ex rel. Munday v. Fire Commissioners, 72 N. Y. 445).
But while such were the requirements of this provision of the law, it was within the authority of the legislature either to supersede, modify or repeal it. As the right was one which was derived from the exercise of legislative authority, it was as much within the power of that body afterwards to change, modify or abrogate, as it was in the first instance to enact it (Smith v. Mayor, 37 N. Y. 518).
And such a change afterwards made in the law as justified the action taken by the commissioners is relied upon in support of their proceedings. This is claimed to have been made by chapter 521 of the Laws of 1880, and the resolution under which the relator was removed was adopted under the authority of this act.
The leading object of the act seems to have been to provide for retrenchment in the expenses of the local government of the city, and for that purpose the salaries of various officers were reduced, and then it was declared to be the duty of every head of department in the next departmental estimate to reduce its aggregate expenses in such a manner that the entire sum to be paid for salaries and compensation of persons.employed in it should be at least ten per cent, below the fiscal year 1880. The duty enjoined by this section of the act was so broad as in terms to include all persons employed in the department, with certain specified exceptions. These were the heads of the department^ day laborers, teachers in schools, and the uniformed force of the police or fire departments. These exceptions tend to emphasize the general provisions contained in the section, and to require such a construction to be given to it as to include all persons employed in the department not mentioned in the exceptions so made (1 L. 1880, 733, § 3).
*420 They accordingly include the office or position held by the relator. For the purpose of more effectually extending and enforcing the policy of the act, it was further declared by the last provision contained in this section, that in making the reduction therein required, every head of a department might abolish and consolidate offices and bureaus, and discharge subordinates in the same department. This is a broad and unqualified power, creating the authority in the department to discharge its subordinates without resorting to the formality of either preferring charges, or affording a hearing to the person intended to be removed. A removal under the provision would in no way affect or" compromise the competency, ability or fitness of the person removed, and for that reason it was not within the terms or the spirit of the section contained in the act of 1873, which has already been mentioned. The object of creating this - power was more effectually to reduce the expenses of the department by which it might be exercised, when removals were to be made under it. The sole and simple object inducing them was the reduction of the public expenditures. Although the relator may not have been a subordinate in the department within the meaning of that term as it was used in the act' of 1873, he. still was within its signification as it was employed in this section of the act of 1880. For so specific an enumeration of the persons to whom it was rendered inapplicable was made by the terms of the section itself, that it must be construed as including all other persons in the service of the department. The general terms of the section, as well as the exceptions so carefully made, show that to have been the intention of the legislature, and there is. no reason why the section should not have been so framed for the purpose of promoting the policy of the law. That was not only to reduce the salaries and compensation of the persons who might be re *421 tained, but beyond that bo diminish the offices themselves, and the number of the persons employed to dis-¡» charge their duties. The object of the law requires that its provisions should be fairly construed to promote the ends designed to be accomplished by its enactment. And when it is construed in that manner, the conclusion appears to be reasonably warranted that the commissioners of this department had the power to remove the relator as one of its subordinates, without first hearing him as to the propriety of their contemplated action. To that extent the preceding statutory provision was modified by adding to it this unqualified authority vested in the commissioners.
In the resolution by which the removal was made, it was stated to have been done in compliance with this act of 1880, and because the appropriation for the payment of the salaries of the clerical force for the yeai* 1881 was insufficient to pay those of all the persons employed upon such force. This statement disclosed the fact that the commissioners acted in subordination to the act of 1880 in removing the relator from his position. He has taken issue with the accuracy of this statement, and in his affidavit presented for the allowance of the writ asserted that no such insufficiency in the appropriation existed, and under the authority of section 3138 of the Code of Civil Procedure this statement requires to be considered in the disposition of the case. For by the terms of that section the case is not only'to be heard upon the return, but also upon the papers on which the writ was granted. It could not, however, have been the design of this extension of the law to allow the return to be controverted or, overthrown in its statements by anything contained in the papers presented for the allowance of the writ. As. the law previously stood, the return to the writ of certiorari was conclusive as to the facts contained in it (People ex rel. Sims v. Fire Commissioners, 73 N. Y. 437).
*422 And it could not have been the purpose of the legislature, by this provision of the Code, so far to interfere with the existence of this well-settled rule of practice as to allow the return itself to be rejected because it might not be consistent with the statements contained in the affidavit upon which the application should be made for the writ of certiorari. There would be no just propriety in giving such a construction to this provision of the statute. But what was, and all that was, probably intended, was that where the return itself might be silent, that the affidavit or papers upon which the writ issued might be resorted to for the purpose of including facts not set out in the return. The statement in the affidavit, which has already been referred to, was made for the purpose of contradicting the recitals in the resolution, audit was so regarded by , the relafor at the timé when it was sworn to. For it is introduced into the affidavit by the assertion that the statement contained in the notice served upon him, and which included a copy of the resolutions, was not true. From the language made use of, this was intended, as it did, in fact, to take issue with what the • commissioners had stated to be the reason actuating them in the relator’s removal. And it cannot, therefore, be permitted to affect the truth of the statement made upon this subject by the commissioners. It must, on the contrary, be presumed that their action was prompted by the cause stated by them, which was the insufficiency of the appropriations made. A further reason urged for disregarding the action of the commissioners was that the relator’s office was continued and his services performed by another person, at a salary greater than that which had been paid to him. But it is evident, from what he has said, that no new appointee was selected for the purpose of discharging his duties. Although the statement made is obscure, it still warrants the conclusion that some other person *423 in the employment of the department, who received a greater salary than that which had been paid to the relator, was required to perform his duties in addition to those previously imposed upon that person. Bat if this was the fact, it in no manner impugned the action of the commissioners. On the contrary, it rendered it evident that in what they did they were engaged in carrying out the policy of this act of 1880.
Bat if, from the statement contained in the affidavit, it should be assumed that the appropriation was sufficient to pay the entire clerical force employed by the department, the action of the commissioners would not, because of that circumstance, be unauthorized. They were not obliged to use up or exhaust the entire appropriation ; but it was still their duty, on the other hand, to reduce the expenditures of the department as far as that might prove to be practicable, and for that purpose, under the authority conferred upon them, they might remove subordinates whose services were not needed in what the department itself was required to accomplish. Upon this subject the authority which was created was broad and unqualified, and it allowed the commissioners to discharge such of their subordinates as could be dispensed with, for the mere purpose of reducing the expenses of the department. They may, in. this instance, have proceeded harshly in not giving the relator timely notice of what they intended to do. But as the statute has not made their action dependent in any respect upon the service of notice, its force and effect cannot be impaired by reason of the existence of these circumstances. The proceedings taken by them appear to have been warranted by the act of 1880, and for that reason they are required to be affirmed. But, under the circumstances disclosed, this should be without charging the relator with the costs of this review.
The facts, as they are presented in the cases of *424 James H. Turner and Vincent Clarke, are no more favorable to those relators than they were presented in the case of McCarthy. They were removed from similar positions, under the authority of the same resolution, and it appears by the affidavits made that a like disposition of their services followed the fact of their removal. They were attached to the duties of other persons employed in the department, and in that manner the clerical force, as well as the expenses of maintaining it, were, in fact, reduced. The same order should, therefore, be made in the cases of these two relators as has been directed in the case of McCarthy.