(20 Misc. Rep. 652.)

SCOTT v. TWOMBLY et al.

(Supreme Court, Special Term, Kings County. July, 1897.)

1. ELECTIONS—QUALIFICATION OF VOTERS—CONSTRUCTION OF STATUTES.
   By Laws 1870, c. 291, tit. 2, § 13 (as amended in 1895), the question of the
   issuance of bonds by a town in payment for land purchased for a park
   must be submitted to an election at which no one shall vote unless, at the
   time he offers his vote, either he or his wife is "the owner of property as-.
   sessed upon the last preceding' assessment roll"; and the last clause
   means "owner of property assessed to him or her upon the last preceding
   assessment roll."

2. SAME.
   Conceding that Laws 1888, c. 525, authorizes the issuance of bonds by
   municipalities in payment for lands purchased, nevertheless those en-
   titled to vote when the question of purchase is submitted to election would
   be only those qualified to vote on such subjects as provided in Laws 1870,
   c. 291, tit. 2, § 13.

3. SAME—VALIDITY OF ELECTION.
   In an election to decide a question upon which, by statute, only qualified
   property owners can vote, the admission of unqualified votes to a number
   equal to the majority upon which question is decided will annul the election.

Action by William M. Scott against Charles E. Twombly and others,
trustees of the village of Jamaica, to enjoin the levy of a tax to pay
bonds issued by the trustees in payment of lands condemned by them
for park purposes.   On motion for permanent injunction.  Granted.

· Van Vechten & Delavan, for plaintiff.
  W. S. Cogswell and John Fleming, for defendants.

GAYNOR, J.   There is no provision in the special charter of the
village authorizing what has been done.   But by chapter 308 of
the Laws of 1884 the powers conferred upon trustees of villages
by the general village act are conferred upon the trustees of vil-
lages created by special charters, except in the particulars in which
provisions of a special charter may conflict with the general act.   We
must, therefore, look to the general village act (chapter 291, Laws
1870) and the separate general act of 1888 (chapter 525), authorizing
villages to acquire lands for parks, for authority to purchase this
land and to issue the bonds in question therefor, and levy and collect
the sums necessary to pay the interest thereon, and the principal, as
they come due annually.   The latter act does not authorize the issu-
ing of bonds (Wells v. Town of Salina, 119 N. Y. 280, 23 N. E. 870),
but we find that authority in the general village act.   Sections 4 and
5 of title 4 thereof provide for the issuing of bonds for extraordinary
expenditures after the proposition to do so shall be voted upon by
ballot, and carried at a regular or special election, by the electors
"entitled to vote on such questions."   By section 13 of title 2 (as
amended in 1895) it is provided that no person shall vote at a village
election upon a proposition to raise or appropriate a tax, or to pur-
chase property, unless at the time he offers his vote either he or his
wife is "the owner of property assessed upon the last preceding as-
sessment roll."   This is loose, but must mean assessed to him or her.
The vote here was had at a special village meeting or election called
for that purpose only.   All electors were permitted to vote irrespective

of the said property qualification, and this, I think, makes the election a nullity. The case here is not the same as that of illegal votes cast at an election of officers, and subject to the rules in respect to whether such an election shall be declared void or upheld. The object of this statute is that the proposition shall not be carried except by a majority of electors who, or whose wives, own assessed property, and that must appear by a comparison of the vote and of the poll list with the last preceding assessment roll. The number of illegal voters exceeds the majority by which the proposition was carried. It therefore does not affirmatively appear that a majority of qualified electors voted "Yes." The statute is to be construed in harmony with statutes authorizing towns, villages, or school districts to bond themselves for railroads, or to make certain expenditures, upon a vote of a majority of the taxable inhabitants (People v. Trustees of Ft. Edward, 70 N. Y. 28; Smith v. Proctor, 130 N. Y. 319, 29 N. E. 312), and in such cases it must appear affirmatively by a scrutiny of the poll list and assessment roll that a majority of the taxable inhabitants voted "Yes." Here the taxpayers' election required by law was neither held nor certified. If the said act of 1888 should be held to authorize the issuing of bonds as well as the purchase of the land, nevertheless the vote of electors required by it means in this case of such electors as may vote upon such propositions under the general village act. By the special charter of this village, every inhabitant thereof qualified to vote for member of assembly is qualified to vote "for all officers to be elected by virtue of this act, and upon questions which may be submitted by virtue of this act to the inhabitants of the village." But this has no application, as the proposition voted upon at the election in question was not, and could not be, submitted under this act, but was submitted under the act of 1888 and the general village act, as we have seen. I am constrained to grant the injunction.

Ordered accordingly.