(33 Misc. Rep. 257.)

### SPITZER et al. v. VILLAGE OF FULTON.

(Supreme Court, Special Term, Oneida County.    December, 1900.)

VOTERS—PROPERTY QUALIFICATION—CONSTITUTIONAL LAW—VILLAGES—BONDS—
    BID—DEPOSIT—DEMURRER.

 Plaintiffs deposited with their bid for village bonds issued for the pur-
pose of purchasing a park $1,000, to be returned if their bid was rejected,
but to be forfeited if their bid was accepted and they failed to take the
bonds. Their bid was accepted, but they refused the bonds, and sued to
recover the deposit, on the ground that the provision of the village char-
ter (Laws 1898, c. 269, § 5, subd. 2) that, to entitle a voter to vote on
a proposition, he must be entitled to vote for an officer, and he or his
wife must also be the owner of property in the village assessed on the
last preceding assessment roll thereof under which the bonds were voted,
was unconstitutional, and rendered the election and bonds invalid. Const.
art. 2, § 1, provides that every male citizen of the age of 21 years pos-
sessing the required qualifications as to residence shall be entitled to vote
for all officers elected by the people, and on all questions which may be
submitted to the vote of the people. Laws 1870, c. 291, requires that

the proposition that bonds be issued by a village for the purpose of purchasing land for a park shall be voted on at a regular or special village election. *Held*, that the provision of the charter requiring a property qualification of voters voting on the question of issue of bonds by the village was not in conflict with the constitution, which only prescribes the qualification of voters voting on questions submitted to the whole people of the state, and does not restrict the power of the legislature to require other or different qualifications for voters in cities and villages on local matters; hence the objection to the bonds is unfounded, and the demurrer to the complaint is sustained.

Action by Ceilam N. Spitzer and others against the village of Fulton. Demurrer to complaint sustained.

Rollins & Rollins (Jordan J. Rollins, of counsel), for plaintiffs.
Mead & Stranahan, for defendant.

SCRIPTURE, J. This action is brought to recover the sum of $1,000, deposited with the defendant together with a bid for $115,000 registered bonds of the village of Fulton, which were advertised to be sold to the person who would take the same at the lowest rate of interest. The $1,000, under the terms of the contract, was to be returned to the plaintiffs upon the award of the bonds, provided their proposal was not accepted; "otherwise, to be retained by you until the delivery of the bonds and payment therefor, as stated above, and to be retained for and as liquidated damages in case of our failure to make such payment." The bonds were sold on the 20th day of March, 1900, and awarded to the plaintiffs, upon their bid of $3\frac{1}{4}$ per cent. per annum, at the sum of $115,051. The bonds were tendered to the plaintiffs on the 2d day of April, 1900, properly executed, certified to as to genuineness by the United States Mortgage & Trust Company, and their legality approved by J. H. Caldwell, Esq., of New York City, according to the notice of sale of the bonds upon which the proposal of the plaintiffs was made. The plaintiffs declined to accept the bonds, or pay for the same, and demanded the return of the $1,000 deposited as aforesaid. The demand was refused, and action brought to recover the amount. There is no allegation in the complaint that the village of Fulton is in the town of Volney. Neither does the complaint allege that any person's vote offered upon the proposition submitted was refused for the reason that he did not possess the property qualification prescribed by the statute. The bonds in question were issued under the authority of a special village meeting, at which the proposition was submitted to raise the sum of $115,000 for the purpose of establishing a system of waterworks, under chapter 269 of the Laws of 1898.

Section 5 of the charter of the village of Fulton, being chapter 269 of the Laws of 1898, reads as follows:

"Sec. 5. Qualifications of Voters.—A voter at a village election must possess the following qualifications: 1. To entitle him to vote for an officer he must be qualified to vote at a town meeting of the town of Volney, and must have resided in the village thirty days preceding such election. 2. To entitle him to vote upon a proposition, he must be entitled to vote for an officer, and he or his wife must also be the owner of property in the village, assessed upon the last preceding assessment-roll thereof."

The constitution of the state of New York (article 2, § 1) provides as follows:

"Every male citizen of the age of twenty-one years, who shall have been a citizen for ninety days, and an inhabitant of this state for one year next preceding an election, and for the last four months a resident of the county, and for the last thirty days a resident of the election district in which he may offer his vote, shall be entitled to vote at such election in the election district of which he shall at the time be a resident, and not elsewhere, for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to the vote of the people," etc.

The plaintiffs claim that the section of the village charter relating to the qualifications of voters is unconstitutional, and that the bonds issued by the defendant are void and worthless. The defendant insists that the act in question is not violative of the constitution or any of its provisions.

I am able to find but few decisions in this state giving judicial construction to the question involved, although it is believed that since the constitution of 1846 charters have been granted to more than 400 cities and villages, which contained a property qualification for voters upon propositions of this nature. For more than half a century the legislative intent has been clearly shown, and no question raised. It may be laid down as a general proposition that the right of suffrage may be regulated and modified or withdrawn by the authority which conferred it. The right is not a natural right, of which a person cannot be deprived, but is a privilege which may be granted or denied by the people, or the department of government to which they have delegated power in the matter, as general policy may require. People v. Barber, 48 Hun, 198; Blair v. Ridgely, 97 Am. Dec. 248. There have always been limitations upon the right of suffrage, even in the most liberal democracies. In nearly all countries, for example, the right has been denied to women, minors, aliens, and persons non compos mentis. In England, at an early day, the right to vote for members of parliament was limited to those possessed of a certain property qualification; and in a number of the United States the right of suffrage depends upon the possession of a certain amount of property, or upon the payment of taxes, and in some of the states it depends upon the ability to read and write. The right in most states has been fixed by the constitutions, subject to amendment by vote of the people. 29 Am. Law Reg. 873–920. In some states the power both to prescribe the qualifications of voters and to regulate elections is expressly delegated to the legislature. Although it is not uncommon in the older constitutions, there are now no states of the Union which require the possession of property as a requisite for voting at general elections. In many of the states, however, where questions of a local nature, affecting property, such as issuing bonds, incurring debts, etc., are to be submitted to the people of a county, district, or municipality, a property qualification for suffrage is not infrequently prescribed. McGraw v. Commissioners, 89 Ala. 407, 8 South. 852; Murdock v. Weimer, 55 Ill. App. 527. The courts of this state, in a long line of cases, have held that the meaning of the words in a constitutional provision is to be reached in two ways: First, by

ascertaining what the framers desired to guard against by the provision; and, second, by ascertaining the meaning of the words when applied to a statute by writers and courts.  It should be so construed as best to promote the great objects for which it was made, and avoid the two extremes of construction.  Its history, and the conditions and circumstances attending its adoption, must be considered.  It should not be so construed as to work a public mischief, unless its language is such that no other course is open to the court.  The constant and uniform construction of a constitutional provision by every department of the state government will have great, if not controlling, weight upon its interpretation, and almost the force of judicial exposition, and it must be assumed that the legislature, and all other public bodies intrusted with the functions of government, will use the power conferred and in the public interests.  People v. Home Ins. Co., 92 N. Y. 328, 337; Clark v. State, 142 N. Y. 101, 36 N. E. 817.  In construing a provision of the constitution, its history and adoption must be kept in view, and the effect of subsequent amendments are to be determined by the same rules applicable to the interpretation of statutes.  Every presumption is in favor of the constitutionality of a statute, and, to justify the court in pronouncing it an unauthorized expression of the legislative will, it must be made to appear that, when fairly and reasonably construed, it is in clear and substantial conflict with some provision of the constitution.  If the act and the constitution can reasonably be so construed as to enable both to stand, it is the duty of the court to give them that construction.  Sweet v. City of Syracuse, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289.  The constitution confers upon the legislature the whole legislative power, unlimited save by the restrictions of the state and federal constitutions.  People v. West, 106 N. Y. 293, 12 N. E. 610; People v. Keeler, 99 N. Y. 463; Bertholf v. O'Reilly, 74 N. Y. 509.  The legislature may change or abrogate a right derived from legislative authority (People v. French, 10 Abb. N. C. 418), may interfere with vested rights, may directly control the local public affairs of any civil division of the state.  It may enact that the electors of a village may determine what parts of the general village law shall apply to their village (Bank v. Brown, 26 N. Y. 467), or that a provision is not to be effective until approved by vote of the inhabitants of a municipality (Bank of Rome v. Village of Rome, 18 N. Y. 38).  In the Brown Case it was held that the act for the incorporation of villages (section 92, c. 426, Laws 1847) was valid and constitutional.  The electors mentioned in the general act (Laws 1847, c. 426) are described in section 32:  "No person shall vote at any such meeting in respect to raising any such tax, unless he shall be qualified to vote for village officers in such village, and shall own property liable to be assessed for taxes therein."  The constitution does not, in terms or by necessary intendment, restrain the legislature from conferring upon municipal authorities the power to subscribe to the stock of a railroad corporation, and to raise the necessary funds by taxation.  Whether, in any instance, the power of a municipal corporation to tax, to borrow money, to contract debts, or loan its credit has been sufficiently restricted, is a question for the discretion of the legislature, not review-

able in the courts. An act which, by its terms, is to take effect immediately, but which confers upon the authorities of a municipality certain powers not to be exercised until such act has been approved by vote of the inhabitants, is constitutional. This is not a delegation of legislative power, within the case of Barto v. Himrod, 8 N. Y. 483. There are many municipal corporations which have the implied power to issue negotiable bonds as incidental to the general purposes of the corporation. The power of such governmental agencies as counties, townships, and school districts is more strictly construed, and requires legislative action, unless such power is clearly implied from some other power, expressly given, which cannot be fully exercised without it. The legislature, when not restrained by the organic law, may authorize a municipal corporation to issue bonds in aid of a railroad, and to levy taxes to pay bonds, and the interest thereon, with or without a popular vote. It may also provide that the bonds issued shall be valid, notwithstanding defects and irregularities. The power may be conferred, without a previous vote, by the town or city, and the mode in which it shall be exercised may be determined by the legislature. Chicago, B. & Q. R. Co. v. Otoe Co., 16 Wall. 667, 21 L. Ed. 375; President, etc., v. Frick, 34 Ill. 405; McCallie v. Mayor, etc., 3 Head, 322; Alvord v. Bank, 98 N. Y. 599; Lewis v. Commissioners, 1 McCrary, 458, 3 Fed. 191; Supervisors v. Parker, 3 Wall. 93, 96, 18 L. Ed. 33. Constitutional limitations upon the amount of indebtedness which may be incurred by or on behalf of a state do not affect the political and municipal divisions of the state; therefore a prohibition which prohibits a state from pledging its credit in connection with works of internal improvement does not prevent the legislature from authorizing municipal corporations to vote aid to public works. The issue of municipal bonds is ordinarily authorized upon certain conditions being complied with. Such conditions may be imposed by constitutional provisions, by legislative act, or by municipal authorities. Conditions imposed by the legislature or constitution must be strictly complied with. Such a condition is the common one, requiring the assent of the voters or taxpayers of the municipal body. Leavenworth & D. M. R. Co. v. Platte County Court, 42 Mo. 171; Essex County R. Co. v. Selectmen, etc., of Town of Lunenburg, 49 Vt. 143; Town of Eagle v. Kohn, 84 Ill. 292. The submission, by the legislature, to a local constituency, of a question affecting their local interests, is to be distinguished from the submission of a question affecting the whole state to the entire body of the electors. Bank of Rome v. Village of Rome, 18 N. Y. 38. In the case just cited the court construed chapter 283, Laws 1853. Section 8 of said act reads as follows:

"Sec. 8. The board of trustees shall have no power to make such subscription as is authorized in the first section of this act, nor to issue bonds or create any liability under this act, until it has been previously approved by two-thirds of all electors who shall have paid a tax on personal or real estate in said village, whose names shall appear regularly in the last village assessment-roll for the year next preceding the one in which the vote is taken."

The same principle is held in Gould v. Town of Sterling, 23 N. Y. 439, 456. It will be observed, from the cases cited, the marked dis-

finction between the voter entitled to vote at a general election, and one where questions of a local nature affecting property, such as issuing bonds and incurring debts, are concerned.

We are now prepared to examine the various constitutions of the state and find their true intent and meaning. In all save the last—that of 1895—we find a property qualification. The constitution of 1777 provides that each male citizen shall be entitled to vote for representatives in assembly. In the constitution of 1821 it was amended so that the citizen was entitled to vote in the town or ward for all officers that now or hereafter may be elective by the people. In 1826 there was no change, except that the property qualification was abolished as regards white citizens. In 1846 the expression "for all officers that now or hereafter may be elective by the people" was not changed, but the words "town or ward where he actually resides, and not elsewhere," were stricken out, and the words "shall be entitled to vote at such elections in the election district of which he shall at the time be a resident, and not elsewhere." The expression, "may be elective by the people," is in all previous constitutions except the first. In the constitution of 1895, after "people," the additional clause is inserted, "and upon all questions which may be submitted to the vote of the people." The counsel for the plaintiffs insist that the proceedings and debates of the constitutional convention of 1867–68, volumes 1 and 5, show that the framers of the constitution intended to fix the qualification of voters for all elections, both state, local, and municipal. No part of the constitution adopted by this convention, save the judiciary article, was accepted by the people, yet it is a part of the history of the present constitution, and is worthy of consideration, especially as some of our most eminent jurists were delegates. Mr. Church: "I offer the following amendment: Amend the section by inserting after the word 'people,' 'upon all questions which may be submitted to the vote of the people.'" He contended that the same qualifications should exist for the voters as for all officers elective by the people; that there were a great many questions the legislature may submit,—questions provided in the constitution, such as questions of debt and others,—and, unless this provision was inserted, they might prescribe qualifications for the electors for the particular election, or enlarge the elective franchise or restrict it at their pleasure; and that the same rule should apply to the election of officers and to all other questions on which the people will vote. Judge Folger replied that such a case might occur; that some legislature, desirous of procuring the indorsement by the people of, for instance, a debt proposed to be incurred, may provide that the question shall be submitted to the consideration of the people differently than the constitution provides for the election of officers, and, in his judgment, it was proper to guard against it, and then moved to restrict the application of the amendment to such questions as are provided for in the constitution itself to be submitted. Mr. Comstock: "I wish to ask the gentleman from Orleans, Mr. Church, to accept a slight amendment by adding the words 'of the state at large,' so as to avoid the question of municipal charters." Mr. Church: "Certainly. I did not think there was any doubt under my amendment. If there is, I accept it." Mr. Smith:

"I suppose all questions to be submitted to the people relate to the administration of the affairs of the state, and we are now determining the rule as to who shall participate in the government of the state." The amendment of Mr. Church was carried. It is evident that Judge Church was of the opinion that his amendment had no relation to municipal charters. In fact, he said so. It is also evident that he and his associates were dealing with the qualification of the electorate for elective officers, and upon all questions submitted to the vote of the people. In the first constitution it was provided that the elector should be a resident of the county. In the second, he was entitled to vote in the town or ward where he resided, and not elsewhere; and this provision remained till the constitution of 1846, when, in the place thereof, it was inserted, "in the election district of which he shall be at the time a resident." The plaintiffs' counsel contends that the change from "county" to "town and ward," and finally to "election district," was for the purpose of making it more general and applicable to every case of an election. We are not able to concur with him when we consider that at the time of the first constitution there were only 14 counties in the state, and in 1846 there were 51. Public policy and convenience in holding the elections demanded the change.

It is claimed by both parties in their briefs that there are no decisions in this state touching the question of the qualification of voters under village charters upon propositions submitted to raise money, etc., for village purposes. In all the constitutions except the last, provision is made for voters and their qualifications for all elective officers in general elections only. In the constitution of 1895 it is provided that all qualified electors may vote upon all questions which may be submitted to the vote of the people. It is evident that all qualified voters under the constitution at general elections are entitled to vote upon these questions, and they are questions in which the whole state has an interest; such as an amendment to the constitution, the proposition to raise $9,000,000 for the improvement of the canal, etc. There is no provision in the constitution in relation to questions to be submitted to a local municipality. It is left wholly with the legislature, and the legislature for nearly a century have prescribed qualifications of voters in municipal elections, school-district elections, etc. The power vested in the legislature to provide the qualifications of voters at such elections, or vest the power to raise money in the board of trustees, or create a board for that purpose, has never been questioned. I am unable to find in any proceedings or constitutional convention had before the adoption of the various constitutions wherein the framers have attempted, even, to restrict legislative power as to the qualifications of voters on propositions submitted to raise money for municipal purposes. From the history, conditions, and circumstances attending the various constitutions we can truly say that there has been a constitutional exposition of the power of the legislature. Contemporaneous legislative exposition of a constitutional provision is entitled to great deference, as it may well be supposed to result from the same views of policy and modes of reasoning which prevailed among the framers of the instrument expounded. People v. Green, 2 Wend. 266. Thus, where a compilation of stat-

utes was prepared and adopted soon after taking effect of a new state constitution, it constitutes a construction as to how the constitution was then understood. Subdivision 2, § 5, of the village charter is constitutional. Where a village issues bonds in order to acquire lands for a park, the bonds must be issued under the general act relative to villages. Laws 1870, c. 291. While authority for action in the matter is also found in the separate general acts (Laws 1888, c. 525) authorizing villages to acquire lands for parks, the proposition that bonds be issued for such a purpose must, under the act of 1870, be voted upon at a regular or special village election; and by the provisions of section 13 of title 2 of that act, as amended in 1895, no person is entitled to vote upon the question unless, at the time when he offers his vote, either he or his wife is the owner of property assessed to him or to her upon the last preceding assessment roll. Scott v. Twombly, 20 Misc. Rep. 652, 46 N. Y. Supp. 1084. The act is constitutional. Bank of Rome v. Village of Rome, 18 N. Y. 38; Bank v. Brown, 26 N. Y. 467; Smith v. Proctor, 130 N. Y. 319, 29 N. E. 312, 14 L. R. A. 403. The legislature has always assumed, and been permitted to assume, the right to determine who might vote for trustees, and what qualifications should or should not be requisite and necessary; and to that class of officers the constitutional provisions have never been applied. In re Gage, 141 N. Y. 114, 115, 35 N. E. 1094, 25 L. R. A. 781. Formal decision and final judgment may be prepared sustaining demurrer, with costs.

Demurrer sustained, with costs.